UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Dilworth-Glyndon-Felton Independent School District 2164, | Case No. 23-cv-2047 (WMW/LIB) |
| Plaintiff, | **ORDER** |
| v. | |
| Comstock Construction, Inc. and The Travelers Indemnity Company, | |
| Defendants. | |

---

This matter is before the Court on Defendant The Travelers Indemnity Company's ("Travelers") motion to dismiss. (Dkt. 24.) For the reasons addressed below, the Court grants Travelers's motion to dismiss.

## BACKGROUND

Plaintiff Dilworth-Glyndon-Felton Independent School District 2164 ("DGF") manages and operates several schools, including Dilworth School located at 108 Main St., Dilworth, MN. DGF contracted with Comstock Construction, Inc. ("Comstock") to provide construction management services for renovations and expansion of Dilworth School. The project included construction of an addition adjoining the existing school gymnasium.

On October 12, 2021, rainwater allegedly accumulated between the existing gymnasium and new construction area. DGF claims that the water seeped into the gymnasium through exterior doors, causing damage to the gymnasium floor that required

replacement. DGF asserts Comstock was responsible for dewatering and protecting the construction site. Comstock obtained a Commercial Inland Marine Builders Risk insurance policy from Travelers covering the period October 1, 2021 to October 1, 2022. The policy declarations name Comstock as the sole Named Insured.

DGF initiated a lawsuit against Comstock and Travelers. DGF claims that it is an additional insured or third-party beneficiary under Comstock's policy with Travelers. Travelers moved to dismiss DGF's amended complaint. DGF opposes the motion.

DGF alleges that its contract with Comstock required Comstock to obtain builder's risk insurance for the Dilworth School project. DGF asserts that it paid Comstock to acquire the Travelers policy on DGF's behalf and that it was DGF's intent to receive coverage under the policy. According to DGF, the gymnasium was intended to be covered under the builder's risk policy, notwithstanding policy terms excluding pre-existing buildings. DGF argues that the gymnasium floor damages are covered because the policy was intended to cover property involved in the construction project overseen by Comstock.

DGF contends that it has privity of contract with Travelers and is an additional insured under the policy based on DGF's contract with Comstock requiring Comstock to obtain builder's risk insurance for DGF's benefit. DGF alleges that its losses are covered under the policy's flood endorsement because the rainwater accumulated on the ground before entering the gymnasium, thereby becoming "surface water."

The Commercial Inland Marine Builders Risk insurance policy that Travelers issued to Comstock was effective from October 1, 2021 to October 1, 2022. The policy declarations name Comstock as the sole "Named Insured." The Insuring Agreement states

that Travelers will pay for direct physical loss of or damage to "Covered Property" caused by a "Covered Cause of Loss." "Covered Property" does not include "buildings or structures that existed prior to the inception of this policy." The "Additional Named Insured" provision requires a written contract executed prior to loss for certain entities to qualify as additional insureds, including "Owners of Covered Property" to the extent of their interest in such property. The policy contains an exclusion for loss or damage caused by or resulting from rain, snow, sleet or ice.

Because Travelers filed a motion to dismiss on DGF's Amended Complaint, Travelers's first motion to dismiss, (Dkt. 15), is moot and the Court considers only the second motion to dismiss, (Dkt. 24).

## ANALYSIS

### I.    Legal Standards

When deciding a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Christiansen v. Eral*, 52 F.4th 377, 379 (8th Cir. 2022). However, legal conclusions and "formulaic recitation of the elements of a cause of action" are not entitled to an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Dismissal is proper when a complaint fails to plead an element that is necessary for the requested relief. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).

Under Minnesota law, the interpretation of an insurance policy is a question of law. *Midwest Family Mut. Ins. Co. v. Wolters*, 831 N.W.2d 628, 636 (Minn. 2013). An insurance policy must be construed as a whole, and if a term is not specifically defined, it must be given its plain and ordinary meaning. *See Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co*., 383 N.W.2d 645, 652 (Minn. 1986).

"Language in a policy is ambiguous if it is reasonably subject to more than one interpretation." *Medica, Inc. v. Atl. Mut. Ins. Co.*, 566 N.W.2d 74, 77 (Minn. 1997). Ambiguous policy language is construed in favor of the insured. *Id*. It is the insured's burden to demonstrate coverage under the policy. *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006). Exclusions are construed narrowly against the insurer. *Id*.

## II.   Standing

### A.   Privity of Contract with Traveler as a Stranger

Under Minnesota law, a plaintiff must establish contractual privity with the insurer to have enforcement rights under the policy. *See Anderson v. First Northtown Nat'l Bank*, 361 N.W.2d 116, 118 (Minn. Ct. App. 1985). As a non-party to the insurance contract, DGF lacks privity with Travelers. *Northern Nat'l Bank v. Northern Minn. Nat'l Bank*, 70 N.W.2d 118, 123 (Minn. 1955).

Travelers is the insurer and Comstock is the named insured under the policy. It is undisputed that DGF is not a named insured under the Travelers policy issued solely to Comstock. Under *Anderson*, contractual privity is required for a party to have policy enforcement rights. 361 N.W.2d at 118. DGF is not in privity with Travelers because it is

4

undisputedly not a named insured and Travelers disputes DGF's alleged additional insured or third-party beneficiary status. With no contractual relationship established, under *Anderson* and *Northern National Bank*, DGF lacks standing as a stranger to enforce policy terms against Travelers.

This lack of contractual privity presents a complete bar to DGF establishing standing as required under Minnesota law to enforce the policy terms or obtain declaratory relief. While DGF asserts alternative grounds for standing, it does not satisfy the express requirements in the Travelers policy to be considered an additional insured or intended third-party beneficiary based on Travelers's dispute of DGF's status. Lacking privity with Travelers, Minnesota case law precludes DFG from proceeding with an action to enforce the Travelers policy.

**B.   Requirements for Additional Insured Status**

The Travelers policy conditions additional insured coverage on a written agreement executed pre-loss between the named insured (Comstock) and the entity seeking coverage (DGF), whereby the named insured agrees to provide the additional insured coverage. Ambiguous terms in an insurance policy are construed in favor of the insured, but clear and unambiguous terms must be given their plain and ordinary meaning. *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998).

Here, the policy terms clearly require a written agreement between Comstock and DGF for additional insured rights to cover damage to property like the gymnasium floors, which DGF admits does not exist. While DGF maintains it still qualifies based on its contract with Comstock, under *Lobeck* clear policy terms control and cannot be

5

disregarded. 582 N.W.2d at 249. Furthermore, the definition of "Covered Property" unambiguously excludes pre-existing buildings like the gymnasium. Specifically, the policy defines Covered Property as property under construction or renovation as part of the project, but contains an explicit exclusion for "buildings or structures that existed prior to the inception of this policy."

The gymnasium is a pre-existing building that was present before the policy period and is therefore categorically excluded from Covered Property regardless of the planned renovations. With no allowance or exception made for buildings like the gymnasium undergoing renovations, the exclusion is definitive. In addition to lacking the required written agreement for coverage of the gymnasium floors, the gymnasium itself is also unambiguously defined as excluded property beyond the scope of coverage. With no written agreement in place and an explicitly excluded property, DGF does not satisfy the plain additional insured coverage requirements.

DGF's reasonable counterarguments cannot overcome the failure to meet express requirements. Therefore, DGF does not qualify as an additional insured under the clear, controlling policy terms and Minnesota law.

### C. Intended Third-Party Beneficiary

Under Minnesota law, a third party has enforceable rights only if the contract indicates an intent to grant that specific party the right of performance, rather than an entire class. *Buchman Plumbing Co., Inc. v. Regents of Univ. of Minn.*, 215 N.W.2d 479, 483-84 (Minn. 1974).

The Travelers policy delineates specific requirements to achieve additional insured status, without mentioning owners or builders generally. This indicates an intent to benefit only the parties satisfying those narrow conditions. As discussed, DGF has not alleged the existence of a written agreement between itself and Comstock as expressly required by the policy to attain additional insured status. Nor does DGF plead any facts showing it meets the other clearly defined prerequisites. Because DGF's complaint fails to assert compliance with the specific additional insured requirements, the policy terms do not confer third-party beneficiary status on DGF as an owner or builder. While DGF raises counterarguments, the complaint does not support third-party beneficiary standing for DGF to enforce the Travelers policy under the test set forth in *Buchman* and Minnesota law.

**III.    The Gymnasium Coverage**

   **A.    Policy Regarding Pre-Existing Buildings**

Unambiguous policy language is given its plain meaning. *Wolters*, 831 N.W.2d at 636. The Travelers policy contains an exclusion for pre-existing buildings under the definition of Covered Property. This exclusion does not indicate that renovations have any bearing on its application. Courts in other jurisdictions have enforced similar blanket exclusions as written under insurance policy interpretation principles. *See, e.g., Toccoa Ltd. Partnership v. North Am. Roofing Servs., LLC*, No. 1:21-cv-00313, 2023 WL 4401545 (E.D. Tex. June 8, 2023); *Vista Ridge Dev., LLC v. Assurance Co. of Am.*, No. 08-cv-01205, 2009 WL 1392077 (D. Colo. May 14, 2009).

7

As such, under the plain, unambiguous language of the Travelers policy and Minnesota law, the gymnasium, as a pre-existing structure, is excluded from Covered Property regardless of the renovations occurring.

### B. Definition v. General Coverage Group Language

Under Minnesota law, when general and specific policy provisions conflict, the specific provision governs. *Jerry's Enters., Inc. v. U.S. Specialty Ins. Co.*, 845 F.3d 883, 890-91 (8th Cir. 2017) (applying Minnesota law); *see also TNT Speed & Sport Ctr., Inc. v. Am. States Ins. Co.*, 114 F.3d 731, 733 (8th Cir. 1997) (applying Minnesota law and concluding where general and specific provisions conflict, specific provision governs).

The Travelers policy contains general coverage groups, but also a specific definition excluding pre-existing buildings from Covered Property. This conflict triggers the rule that the specific exclusion language governs over the general coverage provisions under *Jerry's Enterprises*. 845 F.3d at 890-91. Further, *TNT Speed & Sport* holds that the specific provision controls when general and specific terms conflict. 114 F.3d at 733. Following these cases, the specific building exclusion definition prevails over the general coverage group language under Minnesota law. The plain language of the specific Covered Property definition excluding pre-existing buildings controls over any contrary implications from the general coverage provisions under governing Minnesota law.

### C. Covered Property

Under Minnesota law, it is the insured's burden to show coverage under the policy terms. *Travelers Indem. Co.*, 718 N.W.2d at 894. The insurer then has the burden to prove the applicability of any exclusions. *Id*.

8

The Travelers policy excludes pre-existing buildings from the definition of Covered Property. DGF has not shown that under Minnesota law, renovations impact this exclusion or that the general coverage groups supersede this specific exclusion. Because the policy unambiguously excludes pre-existing buildings, DGF does not satisfy its initial burden of proving coverage. In conclusion, DGF has not met its burden under Minnesota law to establish that the gymnasium floor is Covered Property under the Travelers policy.

## IV.  Rain Exclusion Policy

### A.  Accumulated Rainwater

The Travelers policy excludes coverage for interior damage caused by or resulting from rain. DGF's amended complaint alleges that rainwater accumulated on the ground between the gymnasium and new construction area before traveling under the gymnasium door, causing interior damage. DGF alleges that based on the proximate cause being accumulated rainwater entering the gymnasium, the plain language of the rain exclusion appears to encompass the damages. Citing *Horizon III Real Estate v. Hartford Fire Ins. Co.*, 186 F. Supp. 2d 1000 (D. Minn. 2002), DGF argues that the rainwater became "surface water," which takes the loss outside the exclusion under Minnesota law. However, *Horizon III* involved a burst pipe rather than direct ingress of rainwater, so the surface water analysis is not applicable. 186 F. Supp. 2d at 1002-03. Rather, DGF's allegations attribute the damage directly to accumulated rainwater entering the building.

Therefore, DGF's allegations directly connect the loss to rainwater as the proximate cause. Consequently, the plain language of the unambiguous rain exclusion applies to preclude coverage despite DGF's surface water argument under *Horizon III*.

## B. Coverage Absent Exterior Damage

The Travelers policy excludes coverage for interior rain damage unless the building first sustains exterior damage by a Covered Cause of Loss through which the rain enters.

DGF does not allege that any preceding exterior damage existed before the rainwater entered the gymnasium and caused the interior damage. Citing *Horizon III*, DGF argues that the rain became "surface water" once it hit the ground, taking it outside the rain exclusion. However, *Horizon III* did not involve the application of a rain exclusion and instead addressed surface water from a burst pipe. 186 F. Supp. 2d at 1004. More persuasive reasoning is present in *Amish Connection, Inc. v. State Farm Fire and Cas. Co.*, where the court applied the rain exclusion, holding that rain retains its designation even after collection and building entry. 861 N.W.2d 230, 236 (Iowa 2015). Further, in *S. Fifth Towers, LLC v. Aspen Ins. UK, Ltd.*, the court enforced a similar rain exclusion for damage caused by rain runoff entering through basement doors after accumulating outside. 15-cv-151, 2018 WL 1522349, at *11 (W.D. Ky. Mar. 28, 2018), aff'd, 763 F. App'x 401 (6th Cir. 2019). As in *Amish Connection* and *S. Fifth Towers*, the pooled rainwater entering the gymnasium retains its designation as rain subject to the policy exclusion.

In summary, the rain that allegedly caused the damage is considered "rain" under the policy, even after entering the building. Accordingly, the rain exclusion operates to exclude coverage for the gymnasium floor damage. Consistent with the persuasive authority in *Amish Connection* and *S. Fifth Towers*, the rain that caused the gymnasium damage retains its designation under the policy when that rain entered the building.

Accordingly, the plain language of the rain exclusion excludes coverage for the gymnasium floor damage.

### C. Burden to Show Exception to Exclusion

Under Minnesota law, the insured bears the initial burden to establish coverage under the policy terms, and then the insurer must prove the applicability of any exclusions. *Travelers Indem. Co.*, 718 N.W.2d at 894. The insured also must plausibly allege facts showing damage from a Covered Cause of Loss. *Wolters*, 831 N.W.2d at 636.

DGF argues that the flood endorsement affords coverage. But under *Travelers Indem. Co.*, DGF bears the initial burden to prove the endorsement applies before Travelers must establish the rain exclusion. 718 N.W.2d at 894. DGF has not plausibly alleged any facts showing initial exterior damage from a Covered Cause enabling an exception to the rain exclusion under *Wolters*. 831 N.W.2d at 636. DGF references the policy ambiguity principle. But without first meeting its burden under *Travelers Indem. Co.* to show an endorsement exception, there is no ambiguity to construe in DGF's favor. Absent allegations of exterior damage per *Wolters*, the flood endorsement does not provide an exception to the rain exclusion.

Before Travelers must prove that the rain exclusion applies, DGF must first prove that an exception to that exclusion exists. DGF has not satisfied its initial burden under *Travelers Indem. Co.* and *Wolters* to establish that an exception to the rain exclusion applies.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that Defendant The Travelers Indemnity Company's motion to dismiss, (Dkt. 24), is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: February 6, 2024

s/ Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge